**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas Lee RUTLEDGE,**
**Defendant–Appellant.**

**No. 93–10119.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 1994.

Decided July 6, 1994.

As Amended on Denial of Rehearing and Rejection of Suggestion for Rehearing En Banc Oct. 5, 1994.

Daniel J. Broderick, Asst. Federal Public Defender, Sacramento, CA, for defendant-appellant.

Eugene Illovsky, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellee.

Before: POOLE, BEEZER, and T.G. NELSON, Circuit Judges.

Opinion by Judge T.G. NELSON.

T.G. NELSON, Circuit Judge:

## I

### OVERVIEW

Thomas Lee Rutledge (Rutledge) appeals his 120–month sentence after he pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He contends that the district court erred in: (1) refusing to grant a reduction in his offense level for acceptance of responsibility; (2) calculating his criminal history score; and (3) enhancing his base offense level for possession of a firearm in connection with an attempted robbery. We affirm.

## II

### BACKGROUND

On April 30, 1992, a federal grand jury for the Eastern District of California indicted Rutledge for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Rutledge pled guilty to the charge. At the sentencing hearing on February 9, 1993, the district court heard testimony regarding the events of March 23, 1992.

On that day, Rutledge entered a Subway sandwich shop in South Lake Tahoe with a semi-automatic pistol in his pocket. He and Patricia Dement (now Rutledge's wife) had been on vacation in the area and were returning to Fresno when Rutledge pulled into the Subway parking lot. Because Rutledge had an upset stomach, they remained in the parking lot for 10 to 15 minutes while Rutledge drank antacid. Rutledge then entered the Subway store to get some water.

Two store clerks were working that day, Steven and Sergio. At the sentencing hearing, Steven testified that Rutledge entered the store and obtained a soda cup from him. When he returned to the counter to pay for the soda, Rutledge demanded that Steven give him "all your 20's, 10's, 5's and all your bills." Steven stated that Rutledge had a gun in his right hand when he made the demand for money. Sergio corroborated his co-worker's testimony. He overheard Rutledge demand the money in "5's, 10's and 20's," and he saw Rutledge holding a gun.

At the hearing, Rutledge's version was somewhat different. He insisted that he laid the gun on the counter without realizing it and that once he realized what he had done, he immediately covered the gun with his hand. Although Rutledge admitted that he knew he was committing a crime by carrying the gun, he denied attempting to rob the store.

These events were captured on videotape. The district court viewed the videotape several times and after considering all of the evidence presented, concluded that Rutledge had attempted to rob the store. Because the videotape did not conclusively resolve the dispute, the district court did not base its decision solely upon the tape. Rather, it relied upon the testimony of the witnesses, finding the store clerks' testimony credible. It specifically found that Rutledge's testimony was not credible.

The district court calculated Rutledge's base offense level at 24 and increased it four levels for possession of a firearm in connection with another felony offense. His criminal history category was VI, resulting in a sentencing range of 140–175 months. The district court sentenced Rutledge to 120 months in prison, the statutory maximum. Rutledge appeals that sentence.

## III

### STANDARD OF REVIEW

We review for clear error both the district court's factual findings underlying its sentencing decision, *United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992), and its determination to grant or deny the defendant an acceptance of responsibility reduction. *United States v. Martinez–Gonzalez*, 962 F.2d 874, 878 (9th Cir.1992). We accord great deference to the district court's evalua-

tion of the defendant's acceptance of responsibility. *See* U.S.S.G. § 3E1.1, comment. (n. 5).

## IV

## DISCUSSION

### A. *Acceptance of Responsibility*

■ The parties agree that the amended 1992 version of the Guidelines apply and that if Rutledge is entitled to a reduction for acceptance of responsibility, he should receive a three-level reduction under the amended U.S.S.G. § 3E1.1. Rutledge contends that the district court erred in refusing to grant a reduction for acceptance of responsibility because it conditioned the refusal upon the fact that he denied possessing the gun during the commission of another felony, i.e., attempted robbery. He fully admitted the felony possession charge; however, he adamantly denied the attempted robbery allegation. Consequently, he argues, it violated his Fifth Amendment right against self-incrimination to deny the acceptance of responsibility reduction because he denied the attempted robbery conduct. We reject this argument.

■ Section 3E1.1(a) provides that a defendant is entitled to a two-level [1] reduction if he "clearly demonstrates acceptance of responsibility for his *offense*." § 3E1.1(a) (Nov.1992) (emphasis added).[2] The amended Application Note 1(a) outlines the appropri-

ate considerations for determining whether a defendant qualifies for the reduction:

> truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or *not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).* Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). *A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.*

U.S.S.G. § 3E1.1, comment. (n. 1(a)) (Nov. 1992) (emphasis added).[3] The relevant conduct provision, § 1B1.3, provides that the base offense level and specific offense characteristics shall be determined upon the basis of conduct that "occurred during the commission of the offense of conviction." *See* U.S.S.G. § 1B1.3(a)(1) Nov. 1992).

Rutledge received a base offense level of 24 pursuant to § 2K2.1(a)(2) because he had two prior felony convictions for crimes of violence. He then received a four-level increase for specific offense characteristics which occurred during the course of the of-

---

1. An additional one-level decrease is appropriate if the defendant timely provides information to the authorities or pleads guilty in a timely fashion. *See* U.S.S.G. § 3E1.1(b) (Nov. 1992).

2. The 1991 version provided for the reduction if the defendant "clearly demonstrate[d] a recognition and affirmative acceptance of personal responsibility for his *criminal conduct.*" § 3E1.1 (Nov. 1991) (emphasis added).

3. The entire quoted provision was added to Application Note 1(a) of § 3E1.1 when that provision was amended in 1992. "Absent an ex post facto problem, the district court must apply the version of the Guidelines in effect at the time of sentencing." *United States v. Cueto,* 9 F.3d 1438, 1440 (9th Cir.1993). This amendment provides "guidance as to the meaning of [the term 'offense'] in the context of the guideline." U.S.S.G.App.C., amend. 459, at 283 (Nov. 1992). Because the amendment to Application Note

(1)(a) merely clarifies the meaning of the Guideline provision and does not alter the substantive application of the Guideline, there are no *ex post facto* problems in applying the 1992 version in effect at sentencing (February 1993), instead of the 1991 version in effect at the time of Rutledge's offense (March 1992). *See United States v. Carrillo,* 991 F.2d 590, 592 (9th Cir.) (appropriate to consider amended Guideline provisions in addressing issues because amendments merely clarify the meaning of Guidelines), *cert. denied,* — U.S. —, 114 S.Ct. 231, 126 L.Ed.2d 186 (1993); *see also United States v. Helmy,* 951 F.2d 988, 995 (9th Cir.1991) (to extent amendment can be read to clarify, rather than alter, previous Guideline provision, it can be given substantial weight in determining the meaning of the Guideline), *cert. denied,* — U.S. —, 112 S.Ct. 2287, 119 L.Ed.2d 211 (1992).

fense. *See* § 2K2.1(b)(5) (requiring four-level increase "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense"). The district court concluded that this increase was appropriate because Rutledge possessed the gun in connection with the attempted robbery of the sandwich shop. Because Rutledge denied the attempted robbery conduct, the district court did not grant a reduction for acceptance of responsibility.

Rutledge contends that because he admitted the conduct comprising the offense of conviction, he should receive the reduction. In support of his argument, he relies upon *United States v. Piper*, 918 F.2d 839, 840 (9th Cir.1990). *Piper* did not reach the question posed here, and thus, contrary to Rutledge's insistence, *Piper* does not compel application of the acceptance of responsibility reduction in this case. In that decision, we held that conditioning an acceptance of responsibility reduction upon the defendant's admission of conduct for which he had not been convicted could violate his Fifth Amendment rights. *Id.* at 840. We stated that a defendant may be entitled to the reduction "without being required to confess to unproved, uncharged conduct." *Id.*

Relying upon the First Circuit's holding in *United States v. Perez–Franco*, 873 F.2d 455, 459 (1st Cir.1989) (finding district court erred in *conditioning* acceptance of responsibility on defendant's express acknowledgment of responsibility for conduct alleged in all counts of indictment, even dismissed counts), we concluded that "a defendant may controvert evidence of other criminal conduct at sentencing without thereby losing the reduction for acceptance of responsibility." *Piper*, 918 F.2d at 841. "To merit such a reduction, a defendant must show contrition for the crime of which he was convicted, but he need not accept blame for all crimes of which he may be accused." *Id.* However, the holdings in *Piper* and *Perez–Franco* are

premised upon the fact that a defendant cannot be required to admit to uncharged conduct or to relinquish his Fifth Amendment right to silence in order to obtain sentencing benefits. Neither decision reaches the question of a defendant's false denials.

The First Circuit recently addressed the issue presented in this case. *See United States v. Olea*, 987 F.2d 874, 878 (1st Cir. 1993). In *Olea*, the court held that *Perez–Franco* does not permit the acceptance reduction when a defendant lies about related conduct:

> [T]he court's supported finding that appellant had lied when denying involvement in the two later sales took appellant well beyond the *Perez–Franco* safe harbor, *which allows a defendant to remain silent as to the conduct contained in a dismissed charge but does not sanction a defendant's giving of materially false information relative thereto.*

*Id.* (emphasis added).[4]

■ We agree with the First Circuit's approach in *Olea.* The goals of the acceptance of responsibility provision would not be fulfilled if a defendant were eligible to receive the reduction even though he falsely denied relevant conduct. *See* § 3E1.1, comment. (n. 1(a)) ("[A] defendant who *falsely denies,* or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.") (emphasis added). On the other hand, a defendant should not be penalized for choosing to assert his Fifth Amendment right against self-incrimination. If he exercises that right, he cannot be denied the reduction *because* of that choice. Accordingly, we hold that a defendant has the right to remain silent regarding relevant, uncharged conduct; but, once he relinquishes that right and falsely denies such conduct, the district court may weigh the false denial in considering a reduction for acceptance of responsibility.[5]

---

4. *Olea* noted that although the case was not governed by the 1992 amendment to Application Note 1(a), its decision was in accord with that Note. *Olea*, 987 F.2d at 878 n. 4.

5. Our holding places an added burden on defense counsel to remain vigilant. It is counsel's

responsibility to inform his client about the consequences of false denials of uncharged conduct on the calculation of his sentence, and to remind him of his right to remain silent when asked about uncharged conduct by the court or any Government official.

For the foregoing reasons, Rutledge's reliance upon *United States v. Oliveras*, 905 F.2d 623 (2nd Cir.1990), is misplaced.[6] *Oliveras* held that a defendant cannot be required to accept responsibility for crimes other than those to which he has pled guilty because it forces him to choose between Fifth Amendment rights and forfeiting substantial benefits at sentencing to which he would otherwise be entitled. *Id.* at 628. The defendant in *Oliveras* had chosen to remain silent and did not receive the reduction because of that choice.

Unlike *Piper, Perez–Franco* and *Oliveras,* the district court did not condition the acceptance of responsibility reduction upon Rutledge's admitting to the attempted robbery conduct. This case does not fall within the *Piper* framework. Rutledge was not required to confess to any relevant conduct beyond the offense of conviction in order to obtain the reduction. He was entitled to remain silent about any relevant, uncharged conduct. Once he chose to relinquish that right, however, his lack of veracity could be considered in deciding whether he qualified for the reduction. Because Rutledge falsely denied his involvement in the attempted robbery, the district court did not err in refusing to grant the acceptance of responsibility reduction.

■ Finally, we conclude that the district court did not clearly err in finding that Rutledge's testimony was not credible and that he attempted to rob the sandwich shop. The district court did not rely solely upon the videotape to make its finding. Instead, the district court relied upon the testimony of the witnesses involved. The two store clerks testified that Rutledge had attempted to rob the shop, and the district court found their testimony credible. The district court was persuaded that the clerks were truthful by the detail with which they recalled the events, as well as by the fact that each clerk provided corroborating testimony. On the other hand, the district court was convinced that Rutledge's testimony was not credible. By his own admission, Rutledge had been under the influence of drugs and alcohol. He had consumed approximately fifteen drinks and some methamphetamine earlier that day prior to entering the sandwich shop.

■ We decline to overturn the district court's credibility determinations. *See United States v. Sealey,* 830 F.2d 1028, 1032 (9th Cir.1987) ("When findings are based on determinations regarding credibility of witnesses, great deference is given to the trial court's findings."); *see also United States v. Huffhines,* 967 F.2d 314, 317 (9th Cir.1992) (district court's factual findings on credibility matters rarely overturned) (internal citations omitted). Because Rutledge denied relevant conduct which the district court determined to be true, he acted in a manner inconsistent with acceptance of responsibility. Therefore, the district court did not err in denying him the reduction.

### B. *Criminal History*

Rutledge next argues that the district court erred in calculating his criminal history category. He contends that the district court erroneously included three points for his prior 1978 marijuana conviction. He cites three reasons for the district court's error: (i) improper reliance upon unsupported evidence in the presentence report (PSR); (ii) misapplication of § 4A1.2(e); and (iii) failure to consider two prior sentences as "related cases."

■ Even assuming the district court erred by including three points for the prior marijuana conviction, we need not remand because any error was harmless. *See Williams v. United States,* —— U.S. ——, ——–——, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341, 355 (1992). Remand is not necessary if "the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed." *Id.*

---

**6.** *Oliveras* was also decided prior to the 1992 amendment to Application Note 1(a) of § 3E1.1. In reaching its decision, *Oliveras* noted that had the Commission meant the acceptance of responsibility provision to encompass "relevant conduct," it would have used that term in § 3E1.1. 905 F.2d at 629–30. Because Application Note 1(a) of that provision now includes "relevant conduct," that portion *Oliveras* has been superseded.

Inclusion of the prior marijuana conviction in Rutledge's criminal history calculation resulted in 14 total criminal history points and a criminal history category of VI. Based upon a total offense level of 28 and a criminal history category of VI, the sentencing range was 140–175 months. Because the statutory maximum is 120 months imprisonment, the district court sentenced Rutledge to that maximum sentence. Assuming the district court improperly included the three points for the prior marijuana conviction, Rutledge's total criminal history points would be 11, resulting in a criminal history category of V. The sentencing range would then be 130–162 months. *See* U.S.S.G. Sentencing Table. Because the minimum sentence of 130 months imprisonment is still more than the statutory maximum imposed, Rutledge would not receive a reduced sentence if we were to find that the district court erred when it included the additional three points. Accordingly, the error, if any, was harmless.[7]

### C. *Weapon Enhancement*

Finally, Rutledge contends that the district court erred in applying the enhancement for possession of a weapon in connection with another felony offense. Section 2K2.1 provides the offense level for a defendant who is convicted of being a felon in possession of a firearm. Rutledge does not dispute that his base offense level is 24 under § 2K2.1(a)(2). Instead, he claims that the district court erred in applying the enhancement under § 2K2.1(b)(5) which increases the base offense level by four levels "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." The district court applied this four-level enhancement after concluding that Rutledge attempted to rob the Subway sandwich shop, a felony offense. As we concluded above, this finding was not clearly erroneous.

▮▮▮ Rutledge lists several factual findings which he claims are grounds to find that the district court clearly erred, including the following facts: (1) both Mr. and Mrs. Rutledge had been drinking; and (2) Rutledge was not credible because he had prior convic-

tions. As to the former, the district court's finding that both Mr. and Mrs. Rutledge had been drinking is clearly supported in the record by their own admissions. With regard to the latter finding, it was permissible for the district court to consider Rutledge's prior convictions in evaluating his credibility. Nor did it rely upon his prior convictions as the only basis for making its credibility determination. The remaining contested facts pertain to the specifics of what occurred. We conclude that none of those factual findings were clearly erroneous.

▮▮▮ Rutledge also makes a double-counting argument, claiming he is being punished twice for the same conduct. However, the Guidelines specifically provide for a four-level enhancement when a defendant has been convicted of being a felon in possession of a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). Rutledge's sentence does not punish him twice for the same conduct. Rather, it punishes him for felony possession with an enhancement for conduct which occurred during the course of his offense. His offense level would have been 24 if he had just been in possession of the gun. Because he possessed the gun while committing another offense, his offense level was increased four points to 28. Moreover, the failure to reduce for acceptance of responsibility does not constitute double-counting, as Rutledge claims, because the acceptance provision constitutes a sentencing benefit which a defendant may be entitled to receive. The fact that a defendant may fail to receive the reduction does not result in an additional enhancement.

▮▮▮ Lastly, Rutledge argues that the district court erred in not applying a higher standard of proof than a preponderance of the evidence because of the disproportionate effect on his sentence. This argument lacks merit. The preponderance standard of proof "satisfies due process when used to establish uncharged facts or conduct enhancing a sentence under [the Guidelines]." *United States v. Harrison–Philpot,* 978 F.2d 1520, 1523 (9th Cir.1992), *cert. denied,* —— U.S. ——,

---

7. Because we find that any error was harmless, we do not address the three ways in which Rut-

ledge claims the district court erred by including the additional three criminal history points.

113 S.Ct. 2392, 124 L.Ed.2d 294 (1993); *see also United States v. Restrepo,* 946 F.2d 654, 661 (9th Cir.1991) (en banc) (district court need only apply the preponderance of evidence standard in making factual findings at sentencing), *cert. denied,* —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). The preponderance standard requires the district court "to be convinced by a preponderance of the evidence that the fact in question exists." *Restrepo,* 946 F.2d at 661 (internal quotations omitted). We have acknowledged that there may be a case in which the sentencing enhancement is so extreme as to require a higher standard of proof than the preponderance standard. *See, e.g., Harrison–Philpot,* 978 F.2d at 1523–24 (holding that increase in sentencing range from 41–51 to 292–365 did not require higher standard of proof); *United States v. Sanchez,* 967 F.2d 1383, 1384–87 (9th Cir.1992) (sentencing enhancement resulting in a sentencing range increase from 10–16 to 63–78 not so extreme as to require higher standard of proof).

Similarly, this case did not warrant a higher standard of proof. By Rutledge's own calculation, the sentencing range increased from 77–96 months to 140–175 months.[8] If a range increase from 41–51 to 292–365 does not require a higher standard, *see Harrison–Philpot,* 978 F.2d at 1523–24, then the sentencing range increase in this case does not *a fortiori* warrant a higher standard of proof. Moreover, the record reflects that the district court considered the evidence presented in light of the highest standard, proof beyond a reasonable doubt. Therefore, we conclude that the district court neither erred in its sentencing calculation nor in its application of the standard of proof.

**AFFIRMED.**

---

8. Rutledge received 120 months because of the statutory maximum.